UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 15 2008  ★

BROOKLYN OFFICE

—————————————————————— x

ALASKA ELECTRICAL PENSION FUND,
On Behalf of Itself and All Others Similarly
Situated,

                Plaintiff,

    vs.

LEHMAN BROTHERS HOLDINGS INC.
LEHMAN BROTHERS INC., STRUCTURED
ASSET SECURITIES CORPORATION, BNC
MORTGAGE LOAN TRUST 2006-1, BNC
MORTGAGE LOAN TRUST 2006-2, FIRST
FRANKLIN MORTGAGE LOAN TRUST
2006-FFA, FIRST FRANKLIN MORTGAGE
LOAN TRUST 2006-FFB, FIRST FRANKLIN
MORTGAGE LOAN TRUST 2006-FF12,
GREENPOINT MORTGAGE FUNDING
TRUST, SERIES 2006-AR4, GREENPOINT
MORTGAGE FUNDING TRUST, SERIES
2006-AR5,GREENPOINT MORTGAGE
FUNDING GRANTOR TRUST 1-A2A2,
SERIES 2006-AR5,GREENPOINT
MORTGAGE FUNDING GRANTOR TRUST
1-A3A2, SERIES 2006-AR5,GREENPOTNT
MORTGAGE FUNDING TRUST, SERIES
2006-AR6, GREENPOINT MORTGAGE
FUNDING GRANTOR TRUST 1-AlA,
SERIES 2006-AR6, GREENPOINT
MORTGAGE FUNDING GRANTOR TRUST
1-A2B, SERIES 2006-AR6,

    **08    2816**

Civil Action No. _____

Removed from:

Supreme Court of the State of
New York, County of Nassau

No. 011341/08

**NOTICE OF REMOVAL**

**BIANCO, J.**

**LINDSAY, M.J.**

—————————————————————— x

[Caption continued on following page.]

‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒ x

GREENPOINT MORTGAGE FUNDING
GRANTOR TRUST 1-A2A2, SERIES 2006-
AR6, GREENPOINT MORTGAGE
FUNDING GRANTOR TRUST I-A3B,
SERIES 2006-AR6, GREENPOINT
MORTGAGE FUNDING TRUST, SERIES
2006-AR7, GREENPOINT MORTGAGE
FUNDING TRUST, SERIES 2006-AR8,
GREENPOINT MORTGAGE FUNDING
TRUST 2006-HEI, GREENPOINT
MORTGAGE FUNDING TRUST, SERIES
2007-AR1, GREENPOINT MORTGAGE
FUNDING TRUST, SERIES 2007-AR2,
GREENPOINT MORTGAGE FUNDING
TRUST, SERIES 2007-AR3, LEHMAN
MORTGAGE TRUST 2006-5, LEHMAN
MORTGAGE TRUST 2006-6, LEHMAN
MORTGAGE TRUST 2006-7, LEHMAN
MORTGAGE TRUST 2006-8, LEHMAN
MORTGAGE TRUST 2006-9, LEHMAN
MORTGAGE TRUST 2007-1, LEHMAN
MORTGAGE TRUST 2007-2, LEHMAN
MORTGAGE TRUST 2007-3, LEHMAN
MORTGAGE TRUST 2007-4, LEHMAN
MORTGAGE TRUST 2007-5, LEHMAN
MORTGAGE TRUST 2007-6, LEHMAN XS
TRUST, SERIES 2006-13, LEHMAN
MORTGAGE TRUST MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2007-
4, LEHMAN XS TRUST, SERIES 2006-14N,
LEHMAN XS TRUST 2006-15, LEHMAN XS:
TRUST 2006-17, LEHMAN XS TRUST,
SERIES 2006-18N, LEHMAN XS TRUST
2006-19, LEHMAN XS TRUST 2006-20,
LEHMAN XS TRUST, SERIES 2007-2N,
LEHMAN XS TRUST, SERIES 2007-4N,
LEHMAN XS TRUST 2007-5H, LEHMAN
XS TRUST 2007-6, LEHMAN XS TRUST,
SERIES 2007-7N, LEHMAN XS TRUST
2007-9, LEHMAN XS TRUST 2007-10H,
LEHMAN XS TRUST 2007-11,

‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒ x

[Caption continued on following page.]

——————————————————————————— x

LEHMAN XS TRUST, SERIES 2007-12N,
STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-
8, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-
9, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-
10, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-
11I, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-
12, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-
1, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-
2, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-
3, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-
4, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-
5, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-
6, STRUCTURED ASSET INVESTMENT
LOAN TRUST 2006-BNC3, STRUCTURED
ASSET SECURITIES CORPORATION
MORTGAGE LOAN TRUST 2006-BC2,
STRUCTURED ASSET SECURITIES
CORPORATION MORTGAGE LOAN
TRUST 2006-BC3, STRUCTURED ASSET
SECURITIES CORPORATION MORTGAGE:
LOAN TRUST 2006-BC4, STRUCTURED
ASSET SECURITIES CORPORATION
MORTGAGE LOAN TRUST 2006-BC5,
STRUCTURED ASSET SECURITIES
CORPORATION MORTGAGE LOAN
TRUST 2006-BC6, STRUCTURED ASSET
SECURITIES CORPORATION MORTGAGE:
LOAN TRUST 2006-S3, STRUCTURED
ASSET SECURITIES CORPORATION
MORTGAGE LOAN TRUST 2006-S4,

——————————————————————————— x

[Caption continued on following page.]

```
――――――――――――――――――――x
STRUCTURED ASSET SECURITIES       :
CORPORATION MORTGAGE LOAN         :
TRUST 2006-WF3, STRUCTURED ASSET  :
SECURITIES CORPORATION MORTGAGE   :
LOAN TRUST 2007-BC1, STRUCTURED   :
ASSET SECURITIES CORPORATION      :
MORTGAGE LOAN TRUST 2007-BC2,     :
STRUCTURED ASSET SECURITIES       :
CORPORATION MORTGAGE LOAN         :
TRUST 2007-BC3, STRUCTURED ASSET  :
SECURITIES CORPORATION MORTGAGE   :
LOAN TRUST 2007-EQ1, STRUCTURED   :
ASSET SECURITIES CORPORATION      :
MORTGAGE LOAN TRUST 2007-OSI,     :
STRUCTURED ASSET SECURITIES       :
CORPORATION MORTGAGE LOAN         :
TRUST 2007-WFI, LANA FRANKS,      :
EDWARD GRIEB, KRISTINE SMITH,     :
RICHARD MCKINNEY, JAMES J.        :
SULLIVAN and DOES 1-20, inclusive,:

                  Defendants.     :

――――――――――――――――――――x
```

Pursuant to 28 U.S.C. §§1441 and 1446, defendant Lehman Brothers Holdings,

Inc. hereby removes the above-captioned civil action, and all claims and causes of action therein,

from the Supreme Court of the State of New York, County of Nassau to the United States

District Court for the Eastern District of New York.[1] This Court has jurisdiction over this matter

pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, and the

claims may be removed to this Court under 28 U.S.C. § 1453.

As grounds for removal, Lehman states as follows:

―――――――――――――――――

[1] By removing this matter, Lehman does not waive, and expressly preserves, any and all
defenses that it may have including, but not limited to, lack of personal jurisdiction and
service of process.

1

1.    On or about June 19, 2008, plaintiff Alaska Electrical Pension Fund filed this

putative state court class action in the Supreme Court of the State of New York, County of

Nassau, on behalf of all purchasers of certain Mortgage Pass-Through Certificates and Asset-

Backed Notes (the "Certificates"). This case was assigned an index number of 011341/08. The

complaint was received by Lehman on June 25, 2008.

2.    The complaint alleges, among other things, that certain registration statements and

prospectuses filed in connection with the Certificates contained misstatements and omissions in

violation of Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o.

3.    Pursuant to 28 U.S.C. § 1446(a) and (b), this Notice of Removal is being filed in

the United States District Court for the Eastern District of New York within thirty days after June

25, 2008 (the date that Lehman received a copy of the summons and complaint).

Class Action Fairness Act of 2005 ("CAFA")

4.    Pursuant to CAFA, 28 U.S.C. §§1332(d)(2) and 1453, a putative "class action"

commenced after February 18, 2005 may be removed to the appropriate United States District

Court if: (a) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of

interests and costs; and (b) any member of the putative class is a citizen of a state different from

any defendant. 28 U.S.C. § 1332(d)(2)(A).

5.    CAFA applies because the state court action was commenced on or about June 19,

2008, *i.e.*, after the effective date of CAFA. 28 U.S.C. §§ 1332, 1453.

6.    The state court action is a "class action" within the meaning of CAFA because

Plaintiff seeks to represent a class of persons in a "civil action filed under" Article 9 of the New

York Civil Practice Law and Rules, *i.e.*, a "State statute or rule of judicial procedure authorizing

an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a).

7.       The state court action satisfies CAFA's amount in controversy requirement. Under 28 U.S.C. § 1332(d)(6), the amount in controversy in a putative class action is determined by aggregating the amount at issue in the claims of all members of the putative class. Here, the complaint alleges that Defendants made false and misleading statements in connection with the issuance of "billions of dollars worth of" Certificates, and that the value of these Certificates has declined substantially due to alleged violations by the defendants. *See* Class Action Complaint ¶¶ 3, 7. While Lehman denies that Plaintiff or any putative class member is entitled to recover any amount, or to any other relief, these allegations suffice to show that the aggregate amount in controversy is more than $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2).

8.       The state court action also satisfies CAFA's diversity of citizenship requirement. To establish diversity jurisdiction under CAFA, it is sufficient that any one member of the putative class is a citizen of a state different from any one defendant. 28 U.S.C. § 1332(d)(2)(A). As stated in the Summons, Plaintiff Alaska Electrical Pension Fund resides in Anchorage, Alaska. Defendant Lehman is a Delaware corporation with its headquarters located in New York, New York. Other defendants are citizens of Delaware, New Jersey and New York.

9.       No exceptions to CAFA's applicability apply in this case.

Other Procedural Requirements

10.       In accordance with 28 U.S.C. § 1446(a), attached hereto as Exhibit A are file-stamped copies of all process, pleadings and orders served upon Lehman in the state court action, namely the summons and complaint.

3

11.    Lehman will promptly serve a copy of the Notice of Removal on Plaintiff's counsel and file with the Clerk of the Supreme Court of the State of New York, County of Nassau, a Notice of Filing of Notice of Removal pursuant to 28 U.S.C. § 1446(d).

12.    This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. *See* 28 U.S.C. § 1446(a).

WHEREFORE, this action should proceed in the United States District Court for the Eastern District of New York, as an action properly removed thereto.


Dated:  New York, New York
        July 15, 2008

                                  SIMPSON THACHER & BARTLETT LLP


                                  By _____
                                      Michael J. Chepiga
                                      mchepiga@stblaw.com
                                      Paul C. Curnin
                                      pcurnin@stblaw.com
                                      Eric M. Albert
                                      ealbert@stblaw.com
                                      425 Lexington Avenue
                                      New York, N.Y. 10017-3954
                                      Telephone: (212) 455-2000
                                      Facsimile:  212-455-2502

                                      *Attorneys for Defendant Lehman Brothers
                                      Holdings, Inc.*


To:

Samuel H. Rudman, Esq.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, New York 11747

*Attorneys for Plaintiff*

4

Exhibit A

# EXHIBIT
# A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

---------------------------------------------------x

ALASKA ELECTRICAL PENSION FUND,
On Behalf of Itself and All Others Similarly
Situated,

                              Plaintiff,

        vs.

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN BROTHERS INC., STRUCTURED
ASSET SECURITIES CORPORATION, BNC
MORTGAGE LOAN TRUST 2006-1, BNC
MORTGAGE LOAN TRUST 2006-2, FIRST
FRANKLIN MORTGAGE LOAN TRUST
2006-FFA, FIRST FRANKLIN MORTGAGE
LOAN TRUST 2006-FFB, FIRST FRANKLIN
MORTGAGE LOAN TRUST 2006-FF12,
GREENPOINT MORTGAGE FUNDING
TRUST, SERIES 2006-AR4, GREENPOINT
MORTGAGE FUNDING TRUST, SERIES
2006-AR5, GREENPOINT MORTGAGE
FUNDING GRANTOR TRUST 1-A2A2,
SERIES 2006-AR5, GREENPOINT
MORTGAGE FUNDING GRANTOR TRUST
1-A3A2, SERIES 2006-AR5, GREENPOINT
MORTGAGE FUNDING TRUST, SERIES
2006-AR6, GREENPOINT MORTGAGE
FUNDING GRANTOR TRUST 1-A1A,
SERIES 2006-AR6, GREENPOINT
MORTGAGE FUNDING GRANTOR TRUST
1-A2B, SERIES 2006-AR6,

---------------------------------------------------x

[Caption continued on following page.]

Index No.: 2008/011341

Date Purchased:

Plaintiff designates Nassau County
as the place of trial.

The basis of the venue is
Defendant's Business

## SUMMONS

Plaintiff(s) resides at
2600 Denali Sttreet
Suite 200
Anchorage, AK 99503

RECEIVED

JUN 1 9 2008

NASSAU COUNTY
COUNTY CLERK'S OFFICE

```
───────────────────────────── x
GREENPOINT MORTGAGE FUNDING       :
GRANTOR TRUST 1-A2A2, SERIES 2006-:
AR6, GREENPOINT MORTGAGE          :
FUNDING GRANTOR TRUST 1-A3B,      :
SERIES 2006-AR6, GREENPOINT       :
MORTGAGE FUNDING TRUST, SERIES    :
2006-AR7, GREENPOINT MORTGAGE     :
FUNDING TRUST, SERIES 2006-AR8,   :
GREENPOINT MORTGAGE FUNDING       :
TRUST 2006-HE1, GREENPOINT        :
MORTGAGE FUNDING TRUST, SERIES    :
2007-AR1, GREENPOINT MORTGAGE     :
FUNDING TRUST, SERIES 2007-AR2,   :
GREENPOINT MORTGAGE FUNDING       :
TRUST, SERIES 2007-AR3, LEHMAN    :
MORTGAGE TRUST 2006-5, LEHMAN     :
MORTGAGE TRUST 2006-6, LEHMAN     :
MORTGAGE TRUST 2006-7, LEHMAN     :
MORTGAGE TRUST 2006-8, LEHMAN     :
MORTGAGE TRUST 2006-9, LEHMAN     :
MORTGAGE TRUST 2007-1, LEHMAN     :
MORTGAGE TRUST 2007-2, LEHMAN     :
MORTGAGE TRUST 2007-3, LEHMAN     :
MORTGAGE TRUST 2007-4, LEHMAN     :
MORTGAGE TRUST 2007-5, LEHMAN     :
MORTGAGE TRUST 2007-6, LEHMAN XS  :
TRUST, SERIES 2006-13, LEHMAN     :
MORTGAGE TRUST MORTGAGE PASS-     :
THROUGH CERTIFICATES, SERIES 2007-:
4, LEHMAN XS TRUST, SERIES 2006-14N, :
LEHMAN XS TRUST 2006-15, LEHMAN XS :
TRUST 2006-17, LEHMAN XS TRUST,   :
SERIES 2006-18N, LEHMAN XS TRUST  :
2006-19, LEHMAN XS TRUST 2006-20, :
LEHMAN XS TRUST, SERIES 2007-2N,  :
LEHMAN XS TRUST, SERIES 2007-4N,  :
LEHMAN XS TRUST 2007-5H, LEHMAN   :
XS TRUST 2007-6, LEHMAN XS TRUST, :
SERIES 2007-7N, LEHMAN XS TRUST   :
2007-9, LEHMAN XS TRUST 2007-10H, :
LEHMAN XS TRUST 2007-11,          :
───────────────────────────── x
```

[Caption continued on following page.]

```
─────────────────────────── x
LEHMAN XS TRUST, SERIES 2007-12N,      :
STRUCTURED ADJUSTABLE RATE             
MORTGAGE LOAN TRUST, SERIES 2006-      :
8, STRUCTURED ADJUSTABLE RATE          
MORTGAGE LOAN TRUST, SERIES 2006-      :
9, STRUCTURED ADJUSTABLE RATE          
MORTGAGE LOAN TRUST, SERIES 2006-      :
10, STRUCTURED ADJUSTABLE RATE         
MORTGAGE LOAN TRUST, SERIES 2006-      :
11, STRUCTURED ADJUSTABLE RATE         
MORTGAGE LOAN TRUST, SERIES 2006-      :
12, STRUCTURED ADJUSTABLE RATE         
MORTGAGE LOAN TRUST, SERIES 2007-      :
1, STRUCTURED ADJUSTABLE RATE          
MORTGAGE LOAN TRUST, SERIES 2007-      :
2, STRUCTURED ADJUSTABLE RATE          
MORTGAGE LOAN TRUST, SERIES 2007-      :
3, STRUCTURED ADJUSTABLE RATE          
MORTGAGE LOAN TRUST, SERIES 2007-      :
4, STRUCTURED ADJUSTABLE RATE          
MORTGAGE LOAN TRUST, SERIES 2007-      :
5, STRUCTURED ADJUSTABLE RATE          
MORTGAGE LOAN TRUST, SERIES 2007-      :
6, STRUCTURED ASSET INVESTMENT         
LOAN TRUST 2006-BNC3, STRUCTURED       :
ASSET SECURITIES CORPORATION           
MORTGAGE LOAN TRUST 2006-BC2,          :
STRUCTURED ASSET SECURITIES            
CORPORATION MORTGAGE LOAN              :
TRUST 2006-BC3, STRUCTURED ASSET       
SECURITIES CORPORATION MORTGAGE :
LOAN TRUST 2006-BC4, STRUCTURED        :
ASSET SECURITIES CORPORATION           
MORTGAGE LOAN TRUST 2006-BC5,          :
STRUCTURED ASSET SECURITIES            
CORPORATION MORTGAGE LOAN              :
TRUST 2006-BC6, STRUCTURED ASSET       
SECURITIES CORPORATION MORTGAGE :
LOAN TRUST 2006-S3, STRUCTURED         :
ASSET SECURITIES CORPORATION           
MORTGAGE LOAN TRUST 2006-S4,           :
                                       :
                                       :
─────────────────────────── x
```

[Caption continued on following page.]

```
                                              x
STRUCTURED ASSET SECURITIES          :
CORPORATION MORTGAGE LOAN            :
TRUST 2006-WF3, STRUCTURED ASSET     :
SECURITIES CORPORATION MORTGAGE     :
LOAN TRUST 2007-BC1, STRUCTURED      :
ASSET SECURITIES CORPORATION         :
MORTGAGE LOAN TRUST 2007-BC2,        :
STRUCTURED ASSET SECURITIES          :
CORPORATION MORTGAGE LOAN            :
TRUST 2007-BC3, STRUCTURED ASSET     :
SECURITIES CORPORATION MORTGAGE     :
LOAN TRUST 2007-EQ1, STRUCTURED      :
ASSET SECURITIES CORPORATION         :
MORTGAGE LOAN TRUST 2007-OSI,        :
STRUCTURED ASSET SECURITIES          :
CORPORATION MORTGAGE LOAN            :
TRUST 2007-WF1, LANA FRANKS,         :
EDWARD GRIEB, KRISTINE SMITH,        :
RICHARD MCKINNEY, JAMES J.           :
SULLIVAN and DOES 1-20, inclusive,   :
                                      :
                    Defendants.       :
                                              x
```

Defendants.

To the above named Defendant:

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED: June 19, 2008

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

Defendant's address:

Lehman Brothers Holdings Inc.
c/o Prentice Hall Corp System Inc
80 State Street
Albany NY 12207

Lehman Brothers Inc.
c/o Prentice Hall Corp System Inc
80 State Street
Albany NY 12207

- 2 -

BNC Mortgage Loan Trust 2006-1
745 Seventh Avenue, 7th Floor
New York, NY 10019

BNC Mortgage Loan Trust 2006-2
745 Seventh Avenue, 7th Floor
New York, NY 10019

First Franklin Mortgage Loan Trust 2006-FFA
745 Seventh Avenue, 7th Floor
New York, NY 10019

First Franklin Mortgage Loan Trust 2006-FFB
745 Seventh Avenue, 7th Floor
New York, NY 10019

First Franklin Mortgage Loan Trust 2006-FF12
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series 2006-AR4
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series 2006-AR5
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Grantor Trust 1-A2A2, Series 2006-AR5
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Grantor Trust 1-A3A2, Series 2006-AR5
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series 2006-AR6
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Grantor Trust 1-A1A, Series 2006-AR6
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Grantor Trust 1-A2B, Series 2006-AR6
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2006-17
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust, Series 2006-18N
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2006-19
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2006-20
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust, Series 2007-2N
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust, Series 2007-4N
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2007-5H
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2007-6
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust, Series 2007-7N
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2007-9
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2007-10H
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2007-11
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Grantor
Trust 1-A2A2, Series 2006-AR6
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Grantor
Trust 1-A3B, Series 2006-AR6
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series
2006-AR7
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series
2006-AR8
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust 2006-
HE1
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series
2007-AR1
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series
2007-AR2
745 Seventh Avenue, 7th Floor
New York, NY 10019

GreenPoint Mortgage Funding Trust, Series
2007-AR3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2006-5
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2006-6
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2006-7
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2006-8
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust, Series 2007-12N
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2006-8
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2006-9
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2006-10
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2006-11
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2006-12
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2007-1
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2007-2
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2007-3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2007-4
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2007-5
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Adjustable Rate Mortgage Loan
Trust, Series 2007-6
745 Seventh Avenue, 7th Floor
New York, NY 10019

- 4 -

Lehman Mortgage Trust 2006-9
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2007-1
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2007-2
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2007-3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2007-4
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2007-5
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman Mortgage Trust 2007-6
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust, Series 2006-13
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust, Series 2006-14N
745 Seventh Avenue, 7th Floor
New York, NY 10019

Lehman XS Trust 2006-15
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-BC1
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-BC2
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Investment Loan Trust 2006-BNC3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-BC2
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-BC3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-BC4
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-BC5
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-BC6
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-S3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-S4
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-WF3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-EQ1
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-OSI
745 Seventh Avenue, 7th Floor
New York, NY 10019

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-WF1
745 Seventh Avenue, 7th Floor
New York, NY 10019

- 5 -

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-BC3
745 Seventh Avenue, 7th Floor
New York, NY 10019

Edward Grieb
8 Briarberry Court
Lake Grove, NY 11755

Richard McKinney
44 West 77th Street, Apt. 8E
New York, NY 10024

Lana Franks
33 Riverside Drive, Apt. 12F
New York, NY 10023

Kristine Smith
745 Seventh Avenue, 7th Floor
New York, NY 10019

James J. Sullivan
74 West Lane
Pound Ridge, NY 10576

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

---------------------------------------------------------x

ALASKA ELECTRICAL PENSION FUND,
On Behalf of Itself and All Others Similarly
Situated,

        Plaintiff,

   vs.

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN BROTHERS INC., STRUCTURED
ASSET SECURITIES CORPORATION, BNC
MORTGAGE LOAN TRUST 2006-1, BNC
MORTGAGE LOAN TRUST 2006-2, FIRST
FRANKLIN MORTGAGE LOAN TRUST
2006-FFA, FIRST FRANKLIN MORTGAGE
LOAN TRUST 2006-FFB, FIRST FRANKLIN
MORTGAGE LOAN TRUST 2006-FF12,
GREENPOINT MORTGAGE FUNDING
TRUST, SERIES 2006-AR4, GREENPOINT
MORTGAGE FUNDING TRUST, SERIES
2006-AR5,GREENPOINT MORTGAGE
FUNDING GRANTOR TRUST 1-A2A2,
SERIES 2006-AR5,GREENPOINT
MORTGAGE FUNDING GRANTOR TRUST
1-A3A2, SERIES 2006-AR5,GREENPOINT
MORTGAGE FUNDING TRUST, SERIES
2006-AR6, GREENPOINT MORTGAGE
FUNDING GRANTOR TRUST 1-A1A,
SERIES 2006-AR6, GREENPOINT
MORTGAGE FUNDING GRANTOR TRUST
1-A2B, SERIES 2006-AR6,

---------------------------------------------------------x

[Caption continued on following page.]

Index No. : 2008/011341

<u>CLASS ACTION</u>

COMPLAINT FOR VIOLATION OF §§11
AND 15 OF THE SECURITIES ACT OF
1933



<u>DEMAND FOR JURY TRIAL</u>

---------------------------------------------- x

GREENPOINT MORTGAGE FUNDING  :
GRANTOR TRUST 1-A2A2, SERIES 2006-
AR6, GREENPOINT MORTGAGE  :
FUNDING GRANTOR TRUST 1-A3B,  :
SERIES 2006-AR6, GREENPOINT  :
MORTGAGE FUNDING TRUST, SERIES  :
2006-AR7, GREENPOINT MORTGAGE  :
FUNDING TRUST, SERIES 2006-AR8,  :
GREENPOINT MORTGAGE FUNDING  :
TRUST 2006-HE1, GREENPOINT  :
MORTGAGE FUNDING TRUST, SERIES  :
2007-AR1, GREENPOINT MORTGAGE  :
FUNDING TRUST, SERIES 2007-AR2,  :
GREENPOINT MORTGAGE FUNDING  :
TRUST, SERIES 2007-AR3, LEHMAN  :
MORTGAGE TRUST 2006-5, LEHMAN  :
MORTGAGE TRUST 2006-6, LEHMAN  :
MORTGAGE TRUST 2006-7, LEHMAN  :
MORTGAGE TRUST 2006-8, LEHMAN  :
MORTGAGE TRUST 2006-9, LEHMAN  :
MORTGAGE TRUST 2007-1, LEHMAN  :
MORTGAGE TRUST 2007-2, LEHMAN  :
MORTGAGE TRUST 2007-3, LEHMAN  :
MORTGAGE TRUST 2007-4, LEHMAN  :
MORTGAGE TRUST 2007-5, LEHMAN  :
MORTGAGE TRUST 2007-6, LEHMAN XS  :
TRUST, SERIES 2006-13, LEHMAN  :
MORTGAGE TRUST MORTGAGE PASS-  :
THROUGH CERTIFICATES, SERIES 2007-  :
4, LEHMAN XS TRUST, SERIES 2006-14N,  :
LEHMAN XS TRUST 2006-15, LEHMAN XS :
TRUST 2006-17, LEHMAN XS TRUST,  :
SERIES 2006-18N, LEHMAN XS TRUST  :
2006-19, LEHMAN XS TRUST 2006-20,  :
LEHMAN XS TRUST, SERIES 2007-2N,  :
LEHMAN XS TRUST, SERIES 2007-4N,  :
LEHMAN XS TRUST 2007-5H, LEHMAN  :
XS TRUST 2007-6, LEHMAN XS TRUST,  :
SERIES 2007-7N, LEHMAN XS TRUST  :
2007-9, LEHMAN XS TRUST 2007-10H,  :
LEHMAN XS TRUST 2007-11,  :

---------------------------------------------- x

[Caption continued on following page.]

————————————————— x

LEHMAN XS TRUST, SERIES 2007-12N,    :
STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-    :
8, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-    :
9, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-    :
10, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-    :
11, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2006-    :
12, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-    :
1, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-    :
2, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-    :
3, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-    :
4, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-    :
5, STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST, SERIES 2007-    :
6, STRUCTURED ASSET INVESTMENT
LOAN TRUST 2006-BNC3, STRUCTURED    :
ASSET SECURITIES CORPORATION
MORTGAGE LOAN TRUST 2006-BC2,    :
STRUCTURED ASSET SECURITIES
CORPORATION MORTGAGE LOAN    :
TRUST 2006-BC3, STRUCTURED ASSET
SECURITIES CORPORATION MORTGAGE    :
LOAN TRUST 2006-BC4, STRUCTURED
ASSET SECURITIES CORPORATION    :
MORTGAGE LOAN TRUST 2006-BC5,
STRUCTURED ASSET SECURITIES    :
CORPORATION MORTGAGE LOAN
TRUST 2006-BC6, STRUCTURED ASSET    :
SECURITIES CORPORATION MORTGAGE    :
LOAN TRUST 2006-S3, STRUCTURED
ASSET SECURITIES CORPORATION    :
MORTGAGE LOAN TRUST 2006-S4,    :
                                     :
————————————————— x

[Caption continued on following page.]

```
——————————————————— x
STRUCTURED ASSET SECURITIES         :
CORPORATION MORTGAGE LOAN           :
TRUST 2006-WF3, STRUCTURED ASSET    :
SECURITIES CORPORATION MORTGAGE     :
LOAN TRUST 2007-BC1, STRUCTURED     :
ASSET SECURITIES CORPORATION        :
MORTGAGE LOAN TRUST 2007-BC2,       :
STRUCTURED ASSET SECURITIES         :
CORPORATION MORTGAGE LOAN           :
TRUST 2007-BC3, STRUCTURED ASSET    :
SECURITIES CORPORATION MORTGAGE     :
LOAN TRUST 2007-EQ1, STRUCTURED     :
ASSET SECURITIES CORPORATION        :
MORTGAGE LOAN TRUST 2007-OSI,       :
STRUCTURED ASSET SECURITIES         :
CORPORATION MORTGAGE LOAN           :
TRUST 2007-WF1, LANA FRANKS,        :
EDWARD GRIEB, KRISTINE SMITH,       :
RICHARD MCKINNEY, JAMES J.          :
SULLIVAN and DOES 1-20, inclusive,  :
                                    :
                    Defendants.     :
——————————————————— x
```

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons or entities who acquired the Mortgage Pass-Through Certificates and Asset-Backed Notes (collectively, the "Certificates") of Structured Asset Securities Corporation ("Structured Asset" or the "Depositor") pursuant and/or traceable to the false and misleading Registration Statement and Prospectus Supplements issued during 2006-2007 (collectively, the "Registration Statement"). This action involves solely strict liability and negligence claims brought pursuant to the Securities Act of 1933 ("1933 Act").

2.     Structured Asset is a Delaware special purpose corporation formed for the purpose of selling the mortgage loans to the issuing entity. Structured Asset is a wholly owned, direct subsidiary of Lehman Commercial Paper Inc., which is a wholly-owned, direct subsidiary of Lehman Brothers Inc. ("LBI"), which is a wholly owned, direct subsidiary of the Sponsor, Lehman Brothers Holdings Inc. ("Lehman Brothers"). The issuers of the various offerings (the "Defendant Issuers") are the Trusts identified in ¶13, established by Structured Asset to issue billions of dollars worth of Certificates in 2006 and 2007.

3.     On August 8, 2006, Structured Asset and the Defendant Issuers caused a Registration Statement to be filed with the Securities and Exchange Commission ("SEC") in connection with and for the purpose of issuing billions of dollars of Certificates. The Certificates were issued pursuant to Prospectus Supplements, each of which was incorporated into the Registration Statement. The Certificates were supported by pools of mortgage loans. The Registration Statement represented that the mortgage pools would primarily consist of loans generally secured by liens on residential properties, including conventional and adjustable-rate mortgage loans.

4.     Investors purchased the Certificates based upon three primary factors: return (in the form of interest payments), timing of principal and interest payments, and safety (risk of default of the underlying mortgage loan assets). The Registration Statement included false statements and/or

omissions about: (i) the underwriting standards purportedly used in connection with the origination of the underlying mortgage loans; (ii) the maximum loan-to-value ratios used to qualify borrowers; (iii) the appraisals of properties underlying the mortgage loans; and (iv) the debt-to-income ratios permitted on the loans.

     5.     The true facts which were omitted from the Registration Statement were:

- The originators of the underlying mortgage loans were issuing many of the mortgage loans to borrowers who: (i) were not in compliance with the prudent or maximum debt-to-income ratio purportedly required by the lenders; (ii) did not provide adequate documentation to support the income and assets required to issue the loans pursuant to the lenders' stated guidelines; (iii) were steered to stated income/asset and low documentation mortgage loans by lenders, lenders' correspondents or lenders' agents, such as mortgage brokers, because the borrowers could not qualify for mortgage loans that required full documentation; and (iv) did not have the income or assets required by the lenders' own guidelines to afford the required mortgage loan payments, which resulted in a mismatch between the needs and capacity of the borrowers.

- The lenders or the lenders' agents knew that the borrowers either could not provide the required documentation or the borrowers refused to provide it.

- The underwriting, quality control, and due diligence practices and policies utilized in connection with the approval and funding of the mortgage loans were so weak that borrowers were being extended loans based on stated income in the mortgage loan applications with purported income amounts that could not possibly be reconciled with the jobs claimed on the loan application or through a check of free "online" salary databases such as salary.com.

- The appraisals of many properties were inflated, as appraisers were pressured by lenders, lenders' correspondents and/or their mortgage brokers/agents to provide the desired appraisal value regardless of the actual value of the underlying property so the loans would be approved and funded. In this way many appraisers were rewarded for their willingness to support preconceived or predetermined property values violating USPAP regulations.[1]

---

[1]    The Uniform Standards of Professional Appraisal Practice ("USPAP") are the generally accepted standards for professional appraisal practice in North America. USPAP contains standards for all types of appraisal services. Standards are included for real estate, personal property, business and mass appraisal.

6.    As a result, the Certificates sold to plaintiff and the Class were secured by assets that had a much greater risk profile than represented in the Registration Statement. In this way, defendants were able to obtain superior ratings on the tranches or classes of Certificates, when in fact these tranches or classes were not equivalent to other investments with the same credit ratings.

7.    By the Fall of 2007, the truth about the performance of the mortgage loans that secured the Certificates began to be revealed to the public, increasing the risk of the Certificates receiving less absolute cash flow in the future and the likelihood that investors would not receive it on a timely basis. The credit rating agencies also began to put negative watch labels on the Certificate tranches or classes, ultimately downgrading many. As an additional result, the Certificates are no longer marketable at prices anywhere near the price paid by plaintiff and the Class and the holders of the Certificates are exposed to much more risk with respect to both the timing and absolute cash flow to be received than the Registration Statement/Prospectus Supplements represented.

### JURISDICTION AND VENUE

8.    The claims alleged herein arise under §§11 and 15 of the 1933 Act, 15 U.S.C. §§77k and 77o. Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933 Act. Section 22 of the 1933 Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court in the United States." Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. This is an action asserting federal law claims. Thus, it does not fall within the definition of a "covered class action" under §16(b)-(c) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998.

- 4 -

9.      The violations of law complained of herein occurred in this County, including the dissemination of materially false and misleading statements complained of herein into this County. LBI and Lehman Brothers conduct business in this County.

### PARTIES

10.     Plaintiff Alaska Electrical Pension Fund acquired Certificates pursuant and traceable to the Registration Statement and Prospectus Supplements and has been damaged thereby.

11.     Defendant Structured Asset was incorporated in the State of Delaware on January 2, 1987. Structured Asset engages in the securitization of Primary Assets, and is generally engaged in the business of acquiring, owning, holding, transferring, assigning, pledging and otherwise dealing with Primary Assets. The principal office of Structured Asset is located at 745 Seventh Avenue, New York, New York. Defendant Structured Asset was the Depositor.

12.     Defendant Lehman Brothers is a Delaware corporation with its headquarters located at 745 Seventh Avenue, New York, New York. Lehman Brothers, founded in 1850, is a diversified global financial services firm and participates in investment banking, equity and fixed income sales, research and trading, investment management, private equity, and private banking. Lehman Brothers' primary subsidiaries include: LBI, Aurora Loan Services LLC ("Aurora") and Lehman Brothers Bank, FSB ("LBB"), a wholly owned subsidiary of Lehman Brothers. Lehman Brothers was the Sponsor.

13.     The Defendant Issuers of the various Certificates are each New York common law trusts. Each of these Trusts issued hundreds of million of dollars worth of Certificates pursuant to a Prospectus Supplement which listed numerous classes of the Certificates. The Defendant Issuers are:

| | |
|---|---|
| BNC Mortgage Loan Trust 2006-1 | Lehman XS Trust 2006-17 |
| BNC Mortgage Loan Trust 2006-2 | Lehman XS Trust, Series 2006-18N |
| First Franklin Mortgage Loan Trust 2006-FFA | Lehman XS Trust 2006-19 |
| First Franklin Mortgage Loan Trust 2006-FFB | Lehman XS Trust 2006-20 |
| First Franklin Mortgage Loan Trust 2006-FF12 | Lehman XS Trust, Series 2007-2N |
| GreenPoint Mortgage Funding Trust, Series 2006-AR4 | Lehman XS Trust, Series 2007-4N |
| GreenPoint Mortgage Funding Trust, Series 2006-AR5 | Lehman XS Trust 2007-5H |
| GreenPoint Mortgage Funding Grantor Trust 1-A2A2, Series 2006-AR5 | Lehman XS Trust 2007-6 |
| GreenPoint Mortgage Funding Grantor Trust 1-A3A2, Series 2006-AR5 | Lehman XS Trust, Series 2007-7N |
| GreenPoint Mortgage Funding Trust, Series 2006-AR6 | Lehman XS Trust 2007-9 |
| GreenPoint Mortgage Funding Grantor Trust 1-A1A, Series 2006-AR6 | Lehman XS Trust 2007-10H |
| GreenPoint Mortgage Funding Grantor Trust 1-A2B, Series 2006-AR6 | Lehman XS Trust 2007-11 |
| GreenPoint Mortgage Funding Grantor Trust 1-A2A2, Series 2006-AR6 | Lehman XS Trust, Series 2007-12N |
| GreenPoint Mortgage Funding Grantor Trust 1-A3B, Series 2006-AR6 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-8 |
| GreenPoint Mortgage Funding Trust, Series 2006-AR7 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-9 |
| GreenPoint Mortgage Funding Trust, Series 2006-AR8 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-10 |
| GreenPoint Mortgage Funding Trust 2006-HE1 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-11 |
| GreenPoint Mortgage Funding Trust, Series 2007-AR1 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-12 |
| GreenPoint Mortgage Funding Trust, Series 2007-AR2 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-1 |
| GreenPoint Mortgage Funding Trust, Series 2007-AR3 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-2 |

| | |
|---|---|
| Lehman Mortgage Trust 2006-5 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-3 |
| Lehman Mortgage Trust 2006-6 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-4 |
| Lehman Mortgage Trust 2006-7 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-5 |
| Lehman Mortgage Trust 2006-8 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-6 |
| Lehman Mortgage Trust 2006-9 | Structured Asset Investment Loan Trust 2006-BNC3 |
| Lehman Mortgage Trust 2007-1 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC2 |
| Lehman Mortgage Trust 2007-2 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC3 |
| Lehman Mortgage Trust 2007-3 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC4 |
| Lehman Mortgage Trust 2007-4 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC5 |
| Lehman Mortgage Trust 2007-5 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC6 |
| Lehman Mortgage Trust 2007-6 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-S3 |
| Lehman XS Trust, Series 2006-13 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-S4 |
| Lehman XS Trust, Series 2006-14N | Structured Asset Securities Corporation Mortgage Loan Trust 2006-WF3 |
| Lehman XS Trust 2006-15 | Structured Asset Securities Corporation Mortgage Loan Trust 2007-EQ1 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC1 | Structured Asset Securities Corporation Mortgage Loan Trust 2007-OSI |
| Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC2 | Structured Asset Securities Corporation Mortgage Loan Trust 2007-WF1 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC3 | |

14.     Defendant LBI is a wholly-owned subsidiary of Lehman Brothers, and is a registered broker-dealer. LBI is based in New York, New York. LBI acted as the underwriter in the sale of all the Structured Asset offerings, helping to draft and disseminate the offering documents. LBI was the underwriter for all of the Trusts.

- 7 -

15.    Defendant Lana Franks ("Franks") was Principal Executive Officer, President, a director and Chairman of the Board of Directors of Structured Asset during the relevant time period. Defendant Franks signed the August 8, 2006 Registration Statement.

16.    Defendant Edward Grieb ("Grieb") was Chief Financial Officer ("CFO") of Structured Asset during the relevant time period.  Defendant Grieb signed the August 8, 2006 Registration Statement.

17.    Defendant Kristine Smith ("Smith") was Controller and Principal Accounting Officer of Structured Asset during the relevant time period.  Defendant Smith signed the August 8, 2006 Registration Statement.

18.    Defendant Richard McKinney ("McKinney") was a director of Structured Asset during the relevant time period.  Defendant McKinney signed the August 8, 2006 Registration Statement.

19.    Defendant James J. Sullivan ("Sullivan") was a director of Structured Asset during the relevant time period.  Defendant Sullivan signed the August 8, 2006 Registration Statement.

20.    The defendants identified in ¶¶15-19 are referred to herein as the "Individual Defendants." The Individual Defendants functioned as directors to the Trusts as they were directors to Structured Asset and signed the Registration Statement for the registration of the securities issued by the Trusts.

21.    These defendants aided and abetted, and/or participated with and/or conspired with the named defendants in the wrongful acts and course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

22.    The true names and capacities (whether individual, corporate, associate, or otherwise) of defendants Does 1 through 20, inclusive, and each of them, are unknown to plaintiff, who sues

- 8 -

said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants fictitiously named herein is legally responsible in some manner for the events described herein, and thereby proximately caused the damage to the plaintiff and the members of the Class. Plaintiff will seek to amend this complaint to state the true names and capacities of said defendants when they have been ascertained.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to CPLR 901, *et seq.*, on behalf of a class consisting of all persons or entities who acquired the following Certificates pursuant and/or traceable to the false and misleading Registration Statement (Registration No. 333-133985/333-1339851) and who were damaged thereby (the "Class"):

BNC Mortgage Loan Trust 2006-1 Mortgage Pass-Through Certificates, Series 2006-1

BNC Mortgage Loan Trust 2006-2 Mortgage Pass-Through Certificates, Series 2006-2

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR4

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR5

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR6

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR7

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-5

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-6

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-7

First Franklin Mortgage Loan Trust 2006-FFA Mortgage Pass-Through Certificates, Series 2006-FFA

First Franklin Mortgage Loan Trust 2006-FFB Mortgage Pass-Through Certificates, Series 2006-FFB

First Franklin Mortgage Loan Trust 2006-FF12 Mortgage Pass-Through Certificates, Series 2006-FF12

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR8

GreenPoint Mortgage Funding Trust Series 2006-HE1 Home Equity Loan Asset-Backed Notes, Series 2006-HE1

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR1

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR2

GreenPoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR3

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-1

- 9 -

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-8

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-9

Lehman XS Trust, Series 2006-13 Senior/Subordinate Certificates

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-14N

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-15

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-17

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-18N

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-19

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-20

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-2N

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-4N

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-8

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-9

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-10

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-11

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-12

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-1

Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC2

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-2

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-3

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-4

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-5

Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-6

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-5H

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-6

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-7N

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-9

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-10H

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-11

Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-12N

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-2

Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2007-3

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-4

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-5

Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-6

Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-BNC3

| | |
|---|---|
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC3 | Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-WF3 |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC4 | Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC1 |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC5 | Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC2 |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC6 | Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-BC3 |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC7 | Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-EQ1 |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-S3 | Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-OSI |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-S4 | Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-WF1 |

Excluded from the Class are defendants, the officers and directors of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Structured Asset or Lehman Brothers or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. The Registration Statement issued billions of dollars worth of Certificates.

25.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: whether defendants violated the 1933 Act; whether the Registration Statement issued by defendants to the investing public negligently omitted and/or misrepresented material facts about the underlying mortgage loans comprising the pools; and to what extent the members of the Class have sustained damages and the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

29.     Structured Asset was the Depositor of the Trusts from which the Certificates of various classes were sold to investors pursuant to the Registration Statement and Prospectus Supplements. While these offering documents contained data about the mortgage loans, some of the most important information for plaintiff and the other members of the Class, which was omitted from the Registration Statement and Prospectus Supplements, actually involved the underwriting, quality control, due diligence, approval and funding practices and policies for the mortgage loans

- 12 -

and the likelihood and ability of borrowers to repay the mortgage loans according to the terms of the mortgage note and the mortgage or the deed of trust. This depended on several factors, including creditworthiness of borrowers, debt-to-income levels, loan-to-value ratios, assets of the borrower, occupancy of the property securing the mortgage loan, and the accuracy of other data collected during the origination of the mortgage loans.

## THE FALSE AND MISLEADING REGISTRATION STATEMENT/PROSPECTUS SUPPLEMENTS

30.    Defendants caused the Registration Statement/Prospectus Supplements to be filed with the SEC during 2006-2007 in connection with the issuance of billions of dollars in Certificates. The Registration Statement/Prospectus Supplements were false and misleading. The Registration Statement incorporated by reference the subsequently filed Prospectus Supplements. The August 8, 2006 Registration Statement represented that:

> All documents filed by or on behalf of the trust fund referred to in the accompanying prospectus supplement with the Commission pursuant to Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), after the date of this prospectus and prior to the termination of any offering of the Securities issued by the trust fund will be incorporated by reference in this prospectus and will be deemed to be a part of this prospectus from the date of the filing of the documents.

31.    The Trusts were the "Issuers" that caused the Registration Statement, dated August 8, 2006, to be filed with the SEC, which Registration Statement discussed the mortgage loans contained in the mortgage pools held by the Defendant Issuers. Defendants represented that the loans underlying the Certificates were loans made to borrowers whose income documentation was not subject to quite as rigorous a set of standards as for other borrowers, but that the loans were made based on the value of the underlying properties, as confirmed by the appraisals of the properties.

**Omitted Verification Data**

32.    The Registration Statement/Prospectus Supplements emphasized the underwriting standards utilized to generate the underlying mortgage loans held by the Defendant Issuers, but omitted material facts related thereto. The Registration Statement stated that with respect to each mortgage loan, underwriting standards were applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral. The Registration Statement further stated that in many cases an employment verification was obtained from an independent source, typically the borrower's employer. The verification purportedly confirmed, among other things, the length of employment with an organization, the borrower's actual salary and whether it was expected that the borrower would continue employment in the future. Where a prospective borrower was self-employed, the Registration Statement/Prospectus Supplements stated that the borrower was required to submit other verification materials.

33.    These representations were materially false and misleading because they omitted the fact that the lenders (and the lenders' agents, such as mortgage brokers) that transferred loans to the Trusts, which were then placed into the Defendant Issuers, had become so aggressive in approving and funding the mortgage loans that many of the mortgage loans were made to borrowers who had either not submitted or had altered the required documentation. Similarly, those self-employed borrowers who were actually required to submit stated income applications would include income levels which were routinely inflated to extreme levels and objectively unreasonable relative to the stated job titles. These practices had the effect of both dramatically increasing the risk profile of the Certificates and substantially diminishing their actual value.

- 14 -

**Defective Appraisals**

34.    The Registration Statement and Prospectus Supplements also represented that in determining the adequacy of the property to be used as collateral, an appraisal was made of each property considered for financing.  In instances where appraisals were conducted, the appraisers were purportedly required to inspect the property to verify that it was in good repair and that, if new, construction had been completed.  The Registration Statement asserted that appraisals were purportedly based on the market value of comparable homes, the estimated rental income (if considered applicable by the appraiser) and the cost of replacing the home, and adhered to USPAP regulations and requirements.

35.    These representations were materially false and misleading in that they omitted to state that the appraisals were inaccurate due to: (i) a complete lack of controls at the originators and the Depositor; and (ii) the lenders and/or their agents, such as mortgage brokers, exerted pressure on appraisers to come back with pre-determined, preconceived – and false – appraisal values. Appraisers were secretly pressured to appraise properties at artificial levels or they would not be hired again, resulting in appraisals being done on a "drive-by" basis, where appraisers issued their appraisals without reasonable bases for doing so.

**The Prospectus Supplements Contained False Statements About the Originators' Underwriting Practices**

**Lehman Brothers Bank and Aurora Loan Services, LLC[2]**

36.    The Prospectus Supplements omitted material facts about the underwriting practices of LBB and Aurora, an affiliate of Lehman Brothers and Structured Asset and also the Master Servicer of the Trusts.  As noted in the Prospectus Supplement for Structured Adjustable Rate

---

[2]    Lehman Brothers has announced that BNC Mortgage LLC will be combined with Aurora Loan Services LLC into a single unified residential mortgage business.

Mortgage Loan Trust, Series 2006-9, LBB originated residential mortgage loans through its wholly-owned operating subsidiary and agent, Aurora. Thus, due to Aurora's role as originator for LBB, the Prospectus Supplements also omitted material facts about the underwriting practices of LBB, which was the key originator in the following Trusts:

| | |
|---|---|
| Lehman Mortgage Trust 2006-5 | Lehman XS Trust 2006-17 |
| Lehman Mortgage Trust 2006-6 | Lehman XS Trust 2006-19 |
| Lehman Mortgage Trust 2006-7 | Lehman XS Trust 2006-20 |
| Lehman Mortgage Trust 2006-8 | Lehman XS Trust 2007-5H |
| Lehman Mortgage Trust 2006-9 | Lehman XS Trust 2007-6 |
| Lehman Mortgage Trust 2007-1 | Lehman XS Trust, Series 2007-7N |
| Lehman Mortgage Trust 2007-2 | Lehman XS Trust 2007-10H |
| Lehman Mortgage Trust 2007-3 | Lehman XS Trust 2007-11 |
| Lehman Mortgage Trust 2007-4 | Lehman XS Trust, Series 2007-12N |
| Lehman Mortgage Trust 2007-5 | Lehman XS Trust, Series 2006-13 |
| Lehman Mortgage Trust 2007-6 | Lehman XS Trust 2006-15 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC1 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-11 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC2 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-12 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC3 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-1 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC4 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-2 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2006-S3 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-3 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2006-S4 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-4 |

| | |
|---|---|
| Structured Asset Securities Corporation Mortgage Loan Trust 2007-OSI | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-5 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-8 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-6 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-9 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-10 |

37.    As one example, the Registration Statement/Prospectus Supplement dated May 29, 2007 for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-9 stated:

(a)    The LBB Underwriting Guidelines are intended to evaluate the value and adequacy of the mortgaged property as collateral and to consider the applicant's credit standing and repayment ability. On a case-by-case basis, the underwriter may determine that, based upon compensating factors, an applicant not strictly qualifying under the applicable underwriting guidelines warrants an underwriting exception. Compensating factors may include, but are not limited to, low loan-to-value ratios, low debt-to-income ratios, good credit history, stable employment, financial reserves, and time in residence at the applicant's current address. A significant number of the Mortgage Loans may contain underwriting exceptions.

*Omitted Information*:  LBB, Aurora and independent third-party underwriters were not nearly as thorough in getting documentation from or about borrowers as the statement implied.  The emphasis was on getting loans done.  Exceptions were granted not only in situations where compensating factors existed but granted extensively to maintain loan volume.

(b)    The LBB Underwriting Guidelines are applied in accordance with a procedure that generally requires (1) an appraisal of the mortgaged property by a qualified, independent appraiser that conforms to Fannie Mae and Freddie Mac standards and (2) a review of such appraisal by the underwriter and may include a review of the original appraisal by Aurora's review appraisal department. The requirement for review by the appraisal review department is dependent upon several risk factors, including but not limited to loan amount, property value, location of the property, prior experience with the appraiser, underwriter referrals, and property type.

Each appraisal includes a market data analysis based on recent sales of comparable homes in the area. The LBB Underwriting Guidelines generally permit mortgage loans with loan-to-value ratios at origination of up to 100% (or, with respect to certain mortgage loans, up to 95%) for the highest credit-grading category, depending on the creditworthiness of the borrower, the type and use of the property, the debt-to-income ratio and the purpose of the loan application.

- 17 -

*Omitted Information*: The appraisals were not performed and reviewed to the standards implied but were cursory in nature and the supposedly "independent" appraisers knew they would likely not be hired again if they did not come back with a certain appraised value. Thus, there were adverse consequences to the appraiser if the appraisal was lower than the originator desired, but seemingly no adverse consequences if the appraisal was unrealistically too high. There was virtually no review of appraisals for reasonableness. This caused the loan-to-value ratios to be misleading and provided no justification for the limited verification of borrowers' ability to repay the mortgage loans under LBB's, Aurora's and the correspondents' originating practices.

> (c)    In these cases, Aurora will fund loans which are in compliance with all conditions set forth in the loan approval and Aurora's Seller's Guide. Certain correspondents are given delegated underwriting authority. Full delegated underwriting authority is granted only to correspondents who meet a minimum net worth requirement and have a satisfactory quality control program in place; if Aurora has prior experience with the correspondent, such prior experience is reviewed to ensure satisfactory quality of production.

*Omitted Information*: Aurora's background check of correspondents was extremely limited and opened the door for the acquisition of mortgage loans from brokers who did very little, if any, verification of the borrower's ability to repay the loans. Aurora's controls were inadequate to prevent it from acquiring suspect loans which were sure to default absent rapid, significant price appreciation of the underlying property. The correspondents' motivation was to generate as many loans as possible since they were only paid on loans generated and they suffered little adverse consequences when loans went bad. As a result, Aurora's failure to initiate valid controls and verifications over the correspondents' practices predictably caused many questionable loans to be acquired by the Trusts. The delegation of underwriting authority to correspondents was not nearly as limited as represented but was widespread and liberal in an effort to keep loan volume high and increasing.

(d)    A third group of correspondents sell to LBB through Aurora in "mini-bulk" transactions, in which they generally represent and warrant compliance with LBB's Underwriting Guidelines or other guidelines approved by Aurora.

Some correspondents selling through mini-bulk transactions apply for and are granted authority to underwrite mortgage loans for sale to LBB using underwriting guidelines of a company other than Aurora/LBB. These are referred to "Other People's Guidelines", or OPG. The OPG are reviewed by the credit staff at Aurora to determine that they are acceptable to LBB. OPG may vary from LBB's guidelines but the products are deemed by Aurora to be substantially similar to the products produced in accordance with LBB's underwriting guidelines. Aurora's Credit Policy staff reviews all proposed OPG guidelines in detail and identifies material differences from LBB Underwriting Guidelines that represent an increased risk. Those identified areas are either determined to be acceptable, unacceptable (in which case the correspondent is notified that loans with such features are not eligible for purchase), or "materially different, but not prohibited". This "material difference list" is used primarily as a reference by the due diligence team to focus/prioritize their credit review on loans with these material difference characteristics.

*Omitted Information*:  LBB and Aurora did very little to ensure that Other People's Guidelines or "OPG" loan underwriting complied with LBB/Aurora's own guidelines and acquired the loans of many correspondents under this program with little or no review of the correspondents' practices or the loans themselves.  Many of these loans were to borrowers with little evidence of their ability or willingness to pay the amounts owed under their loans.

38.    Aurora was able to be profitable not so much as an acquirer of loans as it was through the enormous fees it charged as a servicer.  Aurora acquired a large number of questionable loans from correspondents with little due diligence; because the loans were securitized, Aurora suffered consequences if the loans did not perform.  Yet Aurora made much of its profits by hitting borrowers hard with fees, such as at least one instance of requiring a $27,000 fee to remove PMI.  Another practice involved Aurora reporting false adverse information about borrowers in adjustable-rate mortgages to credit reporting agencies which would make it difficult for the borrowers to refinance the mortgage when interest rates reset.  These practices made events of default more likely but were not disclosed in the Prospectus Supplements or Registration Statement.

- 19 -

39.    For example, the Prospectus Supplement for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC2, dated August 28, 2006, stated:

(a)    The LBB Underwriting Guidelines are generally not as strict as Fannie Mae or Freddie Mac guidelines. The LBB Underwriting Guidelines are intended to evaluate the value and adequacy of the mortgaged property as collateral and to consider the borrower's credit standing and repayment ability. On a case-by-case basis, the underwriter may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under the applicable underwriting guidelines warrants an underwriting exception. Compensating factors may include, but are not limited to, low-loan-to-value ratios, low debt-to-income ratios, good credit history, stable employment, financial reserves, and time in residence at the applicant's current address. A significant number of Mortgage Loans may represent underwriting exceptions.

*Omitted Information*: Exceptions to the underwriting criteria were granted not only when compensating factors existed but were liberally granted to achieve loan volume. Aurora also did not require correspondents to verify "compensating factors" as a condition of relaxing standards. The improper monitoring of the correspondents ultimately stopped when, in January 2008, Aurora announced it would no longer accept new business form correspondents and brokers.

### BNC Mortgage, Inc.

40.    The Prospectus Supplements included false statements about the loan underwriting practices of BNC Mortgage, Inc. ("BNC"), previously a unit of Lehman Brothers, which was a key originator for the following Trusts:

| | |
|---|---|
| BNC Mortgage Loan Trust 2006-1 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC5 |
| BNC Mortgage Loan Trust 2006-2 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC6 |
| Structured Asset Investment Loan Trust 2006-BNC3 | Structured Asset Securities Corporation Mortgage Loan Trust 2007-OSI |
| Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC2 | Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC1 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC3 | Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC3 |

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-BC4

41.    For example, the Prospectus Supplement for Structured Asset Securities Corporation

Mortgage Pass-Through Certificates, Series 2006-BC2, dated August 28, 2006, stated:

(a)    The BNC Underwriting Guidelines are generally intended to evaluate
the credit risk of Mortgage Loans made to borrowers with imperfect credit histories
ranging from minor delinquencies to bankruptcy, or borrowers with relatively high
ratios of monthly mortgage payments to income, or relatively high ratios of total
monthly credit payments to income. In addition, such guidelines also evaluate the
value and adequacy of the mortgaged property as collateral. On a case-by-case basis,
BNC may determine that, based upon compensating factors, a prospective borrower
who does not strictly qualify under the applicable underwriting guidelines warrants
an underwriting exception. Compensating factors may include, but are not limited
to, relatively low loan-to-value ratio, relatively low debt-to-income ratio, good credit
history, stable employment, and financial reserves.

*Omitted Information*: BNC was very liberal in granting exceptions on underwriting as the

emphasis was much more on generating loan volume than ensuring borrowers could and would

repay the loans. BNC's practices were so aggressive and its controls so poor, that by August 2007,

Lehman Brothers had to shut down BNC.

(b)    Under the BNC Underwriting Guidelines, BNC reviews the loan
applicant's sources of income, calculates the amount of income from all such sources
indicated on the loan application or similar documentation (except under the "Stated
Income" programs), reviews the credit history of the applicant and calculates the
debt-to-income ratio to determine the applicant's ability to repay the loan, and
reviews the mortgaged property for compliance with the BNC Underwriting
Guidelines. The BNC Underwriting Guidelines are applied in accordance with a
procedure that generally requires (1) an appraisal of the mortgaged property that
conforms generally to Fannie Mae and Freddie Mac standards and (2) a review of the
appraisal, such review may be conducted by a BNC staff appraiser or representative
which, depending upon the original principal balance and loan-to-value ratio of the
mortgaged property, may include a desk review of the original appraisal or a drive-by
review appraisal of the mortgaged property. The BNC Underwriting Guidelines
generally permit one-to-two family loans with loan-value ratios or combined loan-to-
value ratios at origination of up to 100% for the highest credit grading category,
depending on the creditworthiness of the borrower and, in some cases, the type and
use of the property and the dept-to-income ratio. Under the BNC Underwriting
Guidelines, the maximum combined loan-to-value ratio for purchase money
mortgage loans may differ depending on whether the secondary financing is
institutional or private.

- 21 -

*Omitted Information*: Appraisals for the mortgages were not nearly as meticulous as suggested by the Prospectus Supplement, but were much more perfunctory and appraisers were motivated to reach a certain conclusion – much more so than to use their professional judgment. Given the credit problems of many of these borrowers, the lack of valid appraisals was a significant adverse fact and indication of future problems. BNC's analysis of the borrower's income was very cursory such that the debt-to-income ratios were misleading.

### GreenPoint Mortgage Funding

42.    The Prospectus Supplements omitted material facts about the underwriting practices of GreenPoint Mortgage Funding, Inc. ("GreenPoint"), which was a key originator in the following Trusts:

| | |
|---|---|
| GreenPoint Mortgage Funding Trust, Series 2006-AR4 | GreenPoint Mortgage Funding Grantor Trust 1-A2B, Series 2006-AR6 |
| GreenPoint Mortgage Funding Trust, Series 2006-AR5 | GreenPoint Mortgage Funding Grantor Trust 1-A2A2, Series 2006-AR6 |
| GreenPoint Mortgage Funding Grantor Trust 1-A2A2, Series 2006-AR5 | GreenPoint Mortgage Funding Grantor Trust 1-A3B, Series 2006-AR6 |
| GreenPoint Mortgage Funding Grantor Trust 1-A3A2, Series 2006-AR5 | GreenPoint Mortgage Funding Trust, Series 2006-AR7 |
| GreenPoint Mortgage Funding Trust, Series 2006-AR6 | GreenPoint Mortgage Funding Trust, Series 2006-AR8 |
| GreenPoint Mortgage Funding Grantor Trust 1-A1A, Series 2006-AR6 | GreenPoint Mortgage Funding Trust 2006-HE1 |
| GreenPoint Mortgage Funding Trust, Series 2007-AR1 | GreenPoint Mortgage Funding Trust, Series 2007-AR3 |
| GreenPoint Mortgage Funding Trust, Series 2007-AR2 | Lehman XS Trust 2007-9 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2007-5 | Lehman XS Trust, Series 2007-12N |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2007-6 | |

43.    For example, the Prospectus Supplement dated May 29, 2007, for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-9, stated:

- 22 -

(a)    Generally, the GreenPoint underwriting guidelines are applied to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral. Exceptions to the guidelines are permitted where compensating factors are present.

*Omitted Information*: Exceptions to guidelines were granted in many circumstances – not just where compensating factors existed. The exceptions were granted when the borrower could not qualify. Many of the loans were granted by the over 18,000 brokers that were approved to transact with GreenPoint – a large enough number that GreenPoint could not exercise any degree of realistic control. Typically, new brokers were actively monitored for only the first five to seven loans submitted, usually during only the first 90 days of being approved.

(b)    GreenPoint acquires or originates many mortgage loans under "limited documentation" or "no documentation" programs. Under limited documentation programs, more emphasis is placed on the value and adequacy of the mortgaged property as collateral, credit history and other assets of the borrower, than on verified income of the borrower. Mortgage loans underwritten under this type of program are generally limited to borrowers with credit histories that demonstrate an established ability to repay indebtedness in a timely fashion, and certain credit underwriting documentation concerning income or income verification and/or employment verification is waived. Mortgage loans originated and acquired with limited documentation programs include cash-out refinance loans, super-jumbo mortgage loans and mortgage loans secured by investor-owned properties. Permitted maximum loan-to-value ratios (including secondary financing) under limited documentation programs are generally more restrictive than mortgage loans originated with full documentation requirements. Under no documentation programs, income ratios for the prospective borrower are not calculated. Emphasis is placed on the value and adequacy of the mortgaged property as collateral and the credit history of the prospective borrower, rather than on verified income and assets of the borrower.

*Omitted Information*: These deficiencies in income documentation made accurate and reliable appraisals essential since so much emphasis was placed on the value of the mortgaged property. However, appraisers were in fact pressured to appraise to certain levels. Appraisers knew if they appraised under certain levels they would not be hired again. Thus, the appraisals were inherently unreliable and there was little to support the value and adequacy of the mortgaged property.

(c)    In determining the adequacy of the property as collateral, an independent appraisal is generally made of each property considered for financing.

- 23 -

All appraisals are required to conform the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standard Board of the Appraisal Foundation. Each appraisal must meet the requirements of Fannie Mae and Freddie Mac. The requirements of Fannie Mae and Freddie Mac require, among other things, that the appraiser, or its agent on its behalf, personally inspect the property inside and out, verify whether the property is in a good condition and verify that construction, if new, has been substantially completed. The appraisal generally will have been based on prices obtained on recent sales of comparable properties determined in accordance with Fannie Mae and Freddie Mac guidelines. In certain cases, an analysis based on income generated by the property or a replacement cost analysis based on the current cost of constructing or purchasing a similar property may be used.

*Omitted Information*:  The documents failed to describe GreenPoint's practice of allowing its staff or outside brokers to push appraisal values which distorted the loan-to-value ratios referred to in the Prospectus Supplement.

(d)    As part of its evaluation of potential borrowers, GreenPoint generally requires a description of the borrower's income. If required by its underwriting guidelines, GreenPoint obtains employment verification providing current and historical income information and/or a telephonic employment confirmation. Employment verification may be obtained through analysis of the prospective borrower's recent pay stubs and/or W-2 forms for the most recent two years or relevant portions of the borrower's most recent two years' tax returns, or from the prospective borrower's employer, wherein the employer reports the borrower's length of employment and current salary with that organization. Self-employed prospective borrowers generally are required to submit relevant portions of their federal tax returns for the past two years.

*Omitted Information*:  GreenPoint did not verify the income of borrowers as represented but had a reputation in the industry for cutting corners on underwriting. Many of GreenPoint's Alt-A loans were actually subprime loans, an innovation later copied by others. GreenPoint was very liberal with terms even to borrowers with low credit scores. As a result of GreenPoint's poor underwriting practices, GreenPoint's parent, Capital One, recently took an $860 million charge.

**Countrywide Home Loans, Inc.**

44.    The Prospectus Supplements also omitted material facts about the underwriting practices of Countrywide Home Loans, Inc., which was the key originator in the following Trusts:

| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-8 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-2 |

| | |
|---|---|
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-9 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-3 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-10 | Structured Adjustable Rate Mortgage Loan Trust, Series 2007-5 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-11 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC2 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-12 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC3 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2007-1 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC4 |
| Lehman XS Trust, Series 2006-18N | Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC5 |
| Lehman XS Trust, Series 2007-2N | Lehman XS Trust, Series 2007-7N |
| Lehman XS Trust, Series 2007-4N | Lehman XS Trust, Series 2007-12N |
| Lehman Mortgage Trust 2006-9 | |

45.     For example, the Prospectus Supplement for Structured Adjustable Rate Mortgage

Loan Trust Mortgage Pass-Through Certificates, Series 2006-9, dated September 28, 2006, stated:

> For all mortgage loans originated or acquired by Countrywide Home Loans, Countrywide Home Loans obtains a credit report relating to the applicant from a credit reporting company. The credit report typically contains information relating to such matters as credit history with local and national merchants and lenders, installment debt payments and any record of defaults, bankruptcy, dispossession, suits or judgments. All adverse information in the credit report is required to be explained by the prospective borrower to the satisfaction of the lending officer.

*Omitted Information*: In fact, lending officers were regularly satisfied about adverse information in

a borrower's credit report by ignoring such adverse information. Lending officers and originators

also knew that borrowers frequently complained to credit rating agencies about adverse information

that was in fact true, knowing that the rating agencies, if they could not confirm the adverse

information within a specified time period, would remove the adverse information from the report.

Moreover, loan applications frequently included inflated borrower income levels which Countrywide

executives overlooked. As *The Wall Street Journal* reported on May 7, 2008:

> [P]rosecutors in the Central District of California in Los Angeles, near Countrywide's headquarters, are investigating possible fraud in the company's origination of loans. Representatives for the prosecutors' offices declined to comment.

- 25 -

People involved in the California inquiry say the Federal Bureau of Investigation, which has carried out the probes under the direction of prosecutors, has seen evidence of *extensive fraud during loan origination, with sales executives deliberately overlooking inflated income figures for many borrowers.*

46.    The Prospectus Supplement for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-9, also stated:

(a)    Except with respect to the mortgage loans originated pursuant to its Streamlined Documentation Program, whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect.

*Omitted Information*: In fact, Countrywide's home loan appraisals were not obtained from truly independent appraisers or appraisal services, but rather were obtained from appraisers who understood that unless appraisals were generated at predetermined amounts that would enable a loan to be approved, they would no longer continue to get business from Countrywide or brokers working with Countrywide. The effect was that purportedly independent appraisals generated in connection with Countrywide home loans were not prepared in conformance with Fannie Mae or Freddie Mac appraisal standards. Countrywide failed to confirm that appraisers were following the guidelines described, and this, combined with the implied or express pressures placed on appraisers to appraise to the desired value, created enormous upward pressure on appraisal values, distorting loan-to-value ratios and making the mortgage loans in the pool much riskier than suggested by the Prospectus Supplements/Registration Statement. This was particularly true in 2006 and 2007 when real estate values in many of the areas where the mortgage pools were located had stopped increasing at the rapid pace of 2004-2005. Thus, the aggressive lending practices introduced during those years (where borrowers were granted large mortgages in excess of their ability to pay with the assurance

- 26 -

that refinancing would be possible in a short time) were extremely risky and likely to lead to significant defaults in years when real estate prices did not increase or even decreased.

        (b)    Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 33% and a debt-to-income ratio based on the borrower's total monthly debt of up to 38%.

*Omitted Information*: Countrywide's debt-to-income ratios were misstated (understated) by the manipulation of reported income levels on loan applications, many times with the knowledge of the mortgage broker. The broker would get paid if the loan went through – even with false information – but would not get paid if they questioned obviously distorted income levels. Countrywide took no meaningful steps to prevent these practices as Countrywide was highly motivated to close and securitize loans – regardless of the underlying risk profile. In fact, during the summer of 2007, when there was increasing publicity about suspect lending practices, Countrywide did an audit of lending practices by certain mortgage brokers and found many inconsistencies in loan applications, but did nothing about it.

        (c)    Under the Stated Income/Stated Asset Documentation Program, the mortgage loan application is reviewed to determine that the stated income is reasonable for the borrower's employment and that the stated assets are consistent with the borrower's income. The Stated Income/Stated Asset Documentation Program permits maximum Loan-to-Value Ratios up to 90%. Mortgage loans originated under the Stated Income/Stated Asset Documentation Program are generally eligible for sale to Fannie Mae or Freddie Mac.

*Omitted Information*: In fact, stated income amounts far in excess of those reasonable for the borrowers' employment were regularly ignored in order to approve loans under the stated income and stated asset documentation programs. Countrywide was offering stated income loans up to 100% loan-to-value until March 2007. In fact, in March 2007, Countrywide assured borrowers that 100% financing was still available:

        "We want to assure homeowners that there is still an extensive selection of mortgage loans to suit a multitude of personal and financial circumstances," said Tom Hunt, managing director of Countrywide Home Loans. "We recognize it's been

- 27 -

widely reported that some major lenders, like Countrywide, no longer offer 100% financing. In fact, we have made changes to certain subprime and other special mortgage programs, but we have not eliminated 100% financing. We still offer one of the widest selections of low- and no-downpayment options to qualified customers, including those with less-than-perfect credit."

## Wells Fargo Bank, N.A.

47.     The Prospectus Supplements made false statements about the loans originated by

Wells Fargo Bank, N.A. ("Wells Fargo") which was a key originator for the following Trusts:

| | |
|---|---|
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-8 | Structured Asset Securities Corporation Mortgage Loan Trust 2006-WF3 |
| Structured Asset Securities Corporation Mortgage Loan Trust 2007-WF1 | Lehman XS Trust 2006-17 |
| Lehman Mortgage Trust 2006-5 | Lehman XS Trust 2007-9 |
| Lehman XS Trust, Series 2006-13 | |

48.     The Prospectus Supplement dated August 30, 2006, for Structured Adjustable Rate

Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-8 stated in part:

> With respect to all mortgage loans underwritten by Wells Fargo Bank, Wells Fargo Bank's underwriting of a mortgage loan may be based on data obtained by parties other than Wells Fargo Bank that are involved at various stages in the mortgage origination or acquisition process. This typically occurs under circumstances in which loans are subject to an alternative approval process, as when Correspondents, certain mortgage brokers or similar entities that have been approved by Wells Fargo Bank to process loans on its behalf, or independent contractors hired by Wells Fargo Bank to perform underwriting services on its behalf ("contract underwriters") make initial determinations as to the consistency of loans with Wells Fargo Bank underwriting guidelines. Wells Fargo Bank may also permit these third parties to utilize scoring systems in connection with their underwriting process. The underwriting of mortgage loans acquired by Wells Fargo Bank pursuant to a Delegated Underwriting arrangement with a Correspondent is not reviewed prior to acquisition of the mortgage loan by Wells Fargo Bank although the mortgage loan file is reviewed by Wells Fargo Bank to confirm that certain documents are included in the file. In addition, in order to be eligible to sell mortgage loans to Wells Fargo Bank pursuant to a Delegated Underwriting arrangement, the originator must meet certain requirements including, among other things, certain quality, operational and financial guidelines.

- 28 -

*Omitted Information*: In fact, Wells Fargo did not attempt to confirm the standards actually used by mortgage brokers, correspondents and other third parties from which Wells Fargo acquired mortgages. These third parties were able to engage in serious underwriting deficiencies without review or correction by Wells Fargo. Wells Fargo has subsequently attributed much of its $1.3 billion mortgage-related write-down to loans it held which were originated by third parties.

### First Franklin Financial Corporation

49.     The Prospectus Supplements made false statements about the loans originated by First Franklin Financial Corporation ("First Franklin") which was a key originator for the following Trusts:

| | |
|---|---|
| First Franklin Mortgage Loan Trust 2006-FFA | First Franklin Mortgage Loan Trust 2006-FF12 |
| First Franklin Mortgage Loan Trust 2006-FFB | |

50.     The Prospectus Supplement dated August 18, 2006, for First Franklin Mortgage Loan Trust 2006-FF12 Mortgage Pass-Through Certificates, Series FF12, of which substantially all the mortgage loans were originated by First Franklin (which at the time was a division of National City Bank of Indiana), stated in part:

(a)     The Mortgage Loan Seller's acquisition underwriting standards are primarily intended to assess the ability and willingness of the borrower to repay the debt and to evaluate the adequacy of the mortgaged property as collateral for the mortgage loan.

*Omitted Information*: First Franklin was extremely flexible in granting mortgages to borrowers with poor credit, so much so that First Franklin was the "go-to" lender for brokers when they had a borrower emerging from bankruptcy. First Franklin did not have adequate compensating controls for the risky loans it made. Soon after being acquired by Merrill Lynch, First Franklin was forced to severely tighten up its standards in early 2007.

(b)     Substantially all of the non-prime mortgage loans that were acquired from NC Bank were based on loan application packages submitted to NC Bank by

- 29 -

third party mortgage brokers which do not fund the mortgage loans. These mortgage brokers must meet minimum standards set by NC Bank and, once approved by NC Bank, the mortgage brokers are eligible to submit loan application packages in compliance with the terms of the mortgage broker agreement with the NC Bank.

Third party lenders must meet minimum standards set by the Mortgage Loan Seller, based on acquisition guidelines that require an analysis of the following information submitted with an application for approval: any applicable state lending license (in good standing), satisfactory credit report only if no federal income tax identification number, signed mortgage loan purchase agreement, signed W-9 and signed lender authorization.

***Omitted Information***:   In fact, subsequent to the relevant offerings, court papers would show First Franklin had been burned by lax underwriting, fraudulent home appraisals and borrowers exaggerating their incomes. First Franklin continued to rely heavily on an army of independent brokers to find borrowers and submit loan applications, even as other U.S. lenders abandoned that channel, citing problems with underwriting and outright fraud.

### IndyMac Bank, F.S.B.

51.    The Prospectus Supplements made false statements about the loans originated by IndyMac Bank, F.S.B. ("IndyMac") which was a key originator for the following Trusts:

| | |
|---|---|
| Lehman XS Trust, Series 2006-14N | Lehman Mortgage Trust 2006-5 |
| Lehman XS Trust, Series 2018-18N | Lehman Mortgage Trust 2006-8 |
| Lehman XS Trust, Series 2006-13 | Lehman Mortgage Trust 2006-9 |
| Lehman XS Trust 2006-17 | Lehman Mortgage Trust 2007-1 |
| Lehman XS Trust, Series 2007-2N | Lehman Mortgage Trust 2007-2 |
| Lehman XS Trust, Series 2007-4N | Lehman Mortgage Trust 2007-3 |
| Lehman XS Trust, Series 2007-12N | Lehman Mortgage Trust 2007-4 |
| Lehman XS Trust 2007-9 | Lehman Mortgage Trust 2006-6 |
| Structured Adjustable Rate Mortgage Loan Trust, Series 2006-8 | Lehman Mortgage Trust 2006-7 |

- 30 -

52.    The Prospectus Supplement dated September 28, 2006, for Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-6, stated in part:

(a)    IndyMac Bank acquires pools of mortgage loans in negotiated transactions either with the original mortgagee or an intermediate owner of mortgage loans.

IndyMac Bank approves each mortgage loan seller prior to the initial transaction on the basis of the seller's financial and management strength, reputation and prior experience. Sellers are periodically reviewed and if their performance, as measured by compliance with the applicable loan sale agreement, is unsatisfactory, IndyMac Bank will cease doing business with them.

*Omitted Information*: In fact, by the time of the Prospectus Supplements, IndyMac, a large originator of Alt-A loans, had become more and more aggressive in the types of loans it would acquire, blurring the line between Alt-A and subprime borrowers. Some industry analysts dubbed these loans "Alt-B" product. The more aggressive acceptance by IndyMac of more questionable borrowers led to higher delinquencies overall. More than 80% of Alt-A mortgages that were securitized in 2006 were low-documentation, stated-income loans, according to *Inside Mortgage Finance*, up from 68% in 2005. Thus, IndyMac was not ensuring compliance with its producers, by third party originators, to the extent represented.

(b)    IndyMac Bank's Underwriting Process

Mortgage loans that are acquired by IndyMac Bank are underwritten by IndyMac Bank according to IndyMac Bank's underwriting guidelines, which also accept mortgage loans meeting Fannie Mae or Freddie Mac guidelines regardless of whether such mortgage loans would otherwise meet IndyMac's guidelines, or pursuant to an exception to those guidelines based on IndyMac Bank's procedures for approving such exceptions.

*Omitted Information*: IndyMac, prior to August 2007, had been granting stated income loans at relatively high loan-to-value ratios. As *blownmortgage.com* noted on August 16, 2007:

Stated income loans at high loan-to-value ratios have been a major source of abuse over the last few years by lenders and brokers. It is a loan that has put a large portion of the home buying public in jeopardy of losing their homes – wittingly or unwittingly. It needs to go; or it needs to be heavily curtailed – and we're definitely seeing that.

- 31 -

*    *    *

IndyMac released another round of massive product changes that specifically focus on making the "liar loans" stated income and no income loan products completely irrelevant to the majority of lending situations; and especially for anyone firmly planted in the Alt-A camp.

They also eliminate some of the more "affordability" type products including the 40 year amortized loans.

53.    The Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2006-6 Prospectus Supplement also stated:

In general, documentation types that provide for less than full documentation of employment, income and liquid assets require higher credit quality and have lower loan-to-value ratios and loan amount limits.

Under the Full/Alternate Documentation program, the prospective borrower's employment, income and assets are verified through written documentation such as tax returns, pay stubs or W-2 forms. Generally, a two-year history of employment or continuous source of income is required to demonstrate adequacy and continuance of income. Borrowers applying under the Full/Alternate Documentation Program may, based on certain loan characteristics and higher credit quality, qualify for IndyMac Bank's FastForward program and be entitled to income and asset documentation relief. Borrowers who qualify for FastForward must state their income, provide a signed Internal Revenue Service Form 4506 (authorizing IndyMac Bank to obtain copies of their tax returns), and state their assets. IndyMac Bank does not require any verification of income or assets under this program.

*Omitted Information*:  In the industry, these loans were referred to as "liar loans" which were much riskier than suggested by the Prospectus Supplement. As *marketoracle* reported:

On March 15, IndyMac released a rather lengthy press release claiming that it had been inappropriately categorized by many media sources as a subprime lender. IndyMac stated that it is primarily a prime/Alt-A mortgage lender with minimal exposure to subprime. With the subprime lenders in melt-down mode, it is quite understandable why IndyMac would want to differentiate itself.

However, it doing so, it brought more attention to itself and was featured in an article by CNN Money called "Liar loans: Mortgage Woes Beyond Subprime."

*    *    *

Alt-A loans are also known as "Stated Income" or "Liar Loans" since income is taken as fact. No further documentation is required. As long the [sic] automated property appraisal software is functioning, approval is only a few keystrokes away.

These loans are tremendously profitable, since the underwriting costs are much lower and the rates are higher than a standard 30 year fixed mortgage.

IndyMac pointed-out in its press release that subprime mortgages generally include loans where the borrower's FICO score is 620 or below and that their customer's average score was 701 in 2006. This is an interesting data point, but a person's FICO score is hardly the root cause of the escalating subprime defaults. The problem lies in the type of loans that have been originated.

\*      \*      \*

Resetting of such loans is causing the subprime sector to explode. Guess what? Alt-A is dominated by these loans as well. Regardless of a person's FICO score, a doubling or tripling of their mortgage is going to cause a problem. The higher FICO person may be able to buy a little more time, but the end result will be the same.

### EquiFirst Corporation

54.    The Prospectus Supplements made false statements about the loans originated by EquiFirst Corporation ("EquiFirst"), which was a key originator for the following Trusts:

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-BC2

Structured Asset Securities Corporation
Mortgage Loan Trust 2007-EQ1

Structured Asset Securities Corporation
Mortgage Loan Trust 2006-BC6

55.    The Prospectus Supplement dated April 20, 2007, for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-EQ1, stated:

(a)    EquiFirst's underwriting standards are primarily intended to assess the ability and willingness of the borrower to repay the debt and to evaluate the adequacy of the mortgaged property as collateral for the mortgage loan. All of the Mortgage Loans were underwritten with a view toward the resale thereof in the secondary mortgage market. EquiFirst considers, among other things, a mortgagor's credit history, repayment ability, as well as the value, type and use of the mortgaged property.

*Omitted Information*: EquiFirst's focus on increasing loan volume caused its consideration of borrowers' repayment ability to be cursory at best. EquiFirst would provide second loans in circumstances to cover borrowers' downpayments, increasing the riskiness of the loans—both first-and second-lien loans. The extent of EquiFirst's lackadaisical approach was shown by the stricter

- 33 -

standards that were put in place in 2008, including: (a) "no more 1099 treated as full doc," suggesting that a 1099 Form had previously served as full documentation; (b) minimum score allowed of 560, suggesting the prior practice had been to allow an even lower score (a score below 600 is deemed an "f" by Vantage Score); and (c) max DTI (debt-to-income) of 50%, suggesting that prior to the change, borrowers' whose loan payment would exceed 50% of their income were granted loans.

(b)    All of the mortgage loans originated by EquiFirst are based on loan application packages submitted through mortgage brokerage companies. These brokers must meet minimum standards set by EquiFirst based on an analysis of the following information submitted with an application for approval: applicable state lending license (in good standing) and a signed broker agreement. Once approved, mortgage brokerage companies are eligible to submit loan application packages in compliance with the terms of a signed broker agreement.

*Omitted Information*:  EquiFirst, which was purchased by Barclays in early 2007, placed very few controls over brokers and correspondents to prevent loans from being approved with high loan-to-value ratios to borrowers with extremely poor credit.  As a result, EquiFirst acquired loans from brokers with borrowers with poor credit in mortgages too large for their income levels.

(c)    EquiFirst's guidelines comply with applicable federal and state laws and regulations and generally require an appraisal of the mortgaged property which conforms to Freddie Mac and/or Fannie Mae standards. All loans are subject to EquiFirst's appraisal review process. Appraisals are provided by qualified independent appraisers licensed in their respective states.

Qualified independent appraisers must meet minimum standards of licensing. Each Uniform Residential Appraisal Report includes a market data analysis based on recent sales of comparable homes in the area. The appraisal review process includes steps that may require (but are not limited to) an automated valuation report, or a manual review from one of our internal staff appraisers to confirm or support the original appraiser's value of the mortgaged premises.

*Omitted Information*:  Due to improper controls over brokers, there was little consequence to brokers who passed along bad loans.  Thus, the brokers had no incentive to obtain legitimate appraisals, but every incentive to make sure the appraisals were high enough to justify the loans. Appraisers were similarly motivated to inflate appraisals where necessary.

- 34 -

## DISCLOSURES EMERGE ABOUT PROBLEMS WITH
## LOANS UNDERLYING THE CERTIFICATES

56.    On January 30, 2008, Moody's Investors Service announced it had taken negative action on many of the Certificates.

57.    On January 30, 2008, Standard & Poor's also announced it was considering slashing its ratings on more than $100 billion of investments tied to bad mortgage loans, including those at issue here.

58.    By April 2008, the rating agencies had downgraded classes of many of these trusts and had put many others on negative watch.

59.    These downgrades have occurred because the original ratings did not accurately reflect the risk associated with the assets underlying the Certificates. The delinquency rates on the underlying mortgage loans have skyrocketed, with some mortgage pool 60-day delinquency rates (including foreclosures, 60+ day delinquencies and real estate owned) totaling more than 30% of the underlying mortgage pools. The massive foreclosure rate and extraordinary delinquencies have further confirmed defendants' misrepresentations concerning the lending practices detailed above.

### FIRST CAUSE OF ACTION

#### Violations of §11 of the 1933 Act Against
#### All Defendants Except Structured Asset and Lehman Brothers

60.    Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Cause of Action, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Cause of Action is based solely on claims of strict liability and/or negligence under the 1933 Act. This Cause of Action is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants except Structured Asset and Lehman Brothers.

- 35 -

61.    The Registration Statement for the Certificate offerings was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

62.    Each of the Defendant Issuers listed in ¶13 are strictly liable to plaintiff and the Class for the misstatements and omissions complained of herein.

63.    The Individual Defendants signed the Registration Statement which was false due to the misstatements described above.

64.    Defendant LBI was an underwriter of all of the Trusts and sold and marketed the Certificates to members of the Class.

65.    None of these defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were not false and misleading or did not omit material facts that rendered statements made therein not false and misleading.

66.    By reason of the conduct herein alleged, each defendant named herein violated, and/or controlled a person who violated, §11 of the 1933 Act.

67.    Plaintiff acquired the Certificates pursuant and/or traceable to the Registration Statement.

68.    Plaintiff and the Class have sustained damages as the value of the Certificates has declined substantially subsequent to the disclosures of defendants' misconduct.

69.    At the time of their purchases of the Certificates, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to early January 2008. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon

- 36 -

which this complaint is based to the time that plaintiff filed this complaint. Less than three years has elapsed between the time that the securities upon which this claim is brought were offered to the public and the time plaintiff filed this complaint.

## SECOND CAUSE OF ACTION

### Violations of §15 of the 1933 Act
### Against the Individual Defendants, Structured Asset and Lehman Brothers

70.    Plaintiff repeats and realleges each and every allegation contained above.

71.    This Cause of Action is brought pursuant to §15 of the 1933 Act against the Individual Defendants, Structured Asset and Lehman Brothers.

72.    Each of the Individual Defendants was a control person of Structured Asset and of the Trusts by virtue of his or her position as a director and/or senior officer of Structured Asset. The Individual Defendants were responsible for the preparation and contents of the Registration Statement which incorporated by reference the statements in the Prospectus Supplements.

73.    Each of the Individual Defendants was a participant in the violations alleged herein, based on their having prepared, signed or authorized the signing of the Registration Statement and having otherwise participated in the consummation of the offerings detailed herein.

74.    Structured Asset was the Depositor for the offerings. Lehman Brothers was the Sponsor for the offering. The defendants named herein were responsible for overseeing the formation of the Defendant Issuers as well as the operations of the Defendant Issuers, including routing payments from the borrowers to investors.

75.    Structured Asset, Lehman Brothers and the Individual Defendant prepared, reviewed and/or caused the Registration Statement and Prospectus Supplements to be filed and disseminated.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

- 37 -

A.    Determining that this action is a proper class action and certifying plaintiff as Class representative;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Awarding such additional equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: June 19, 2008

> COUGHLIN STOIA GELLER
>    RUDMAN & ROBBINS LLP
> SAMUEL H. RUDMAN
> DAVID A. ROSENFELD
>
> SAMUEL H. RUDMAN
>
> 58 South Service Road, Suite 200
> Melville, NY 11747
> Telephone: 631/367-7100
> 631/367-1173 (fax)

- 38 -

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

08 2816

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Alaska Electrical Pension Fund

**DEFENDANTS**

Lehman Brothers Holdings Inc., et al

**(b)** County of Residence of First Listed Plaintiff   **Anchorage, Alaska**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **New York, New York**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Coughlin Stoia Geller Rudman & Robbins LLP

Attorneys (If Known)

Simpson Thacher & Bartlett LLP

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

BIANCO, J.

LINDSAY M.J.

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
- ☐ Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**CIVIL RIGHTS**
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Sections 11 and 15 of the Securities Act of 1933 15 U.S.C. 77k and 77o

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
07/15/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE  JFB          MAG. JUDGE  ARL

2816

## ARBITRATION CERTIFICATION

I, __Paul G. Cumin__ , counsel for __Lehman Brothers Holdings, Inc.__ do hereby certify pursuant to the Local Arbitration Rule 83.10 that to the best of my knowledge and belief the damages recoverable in the above captioned civil action exceed the sum of $150,000 exclusive of interest and costs.
_____ Relief other than monetary damages is sought.

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

_____

## Please refer to NY-E Division of Business Rule 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District of New York removed from a New York State court located in Nassau or Suffolk County: __Yes__

2.) If you answered "no" above:

   a.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? __No__

   b.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? __No__

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? __No__

   (Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

Yes___✓___                                    No_____

Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?

Yes_____(If yes, please explain)              No___✓___

_____

_____

Please provide your E-MAIL Address and bar code below. Your bar code consists of the initials of your first and last name and the last four digits of your social security number or any other four digit number registered by the attorney with the Clerk of Court.
(This information must be provided pursuant to local rule 11.1(b) of the civil rules).

ATTORNEY BAR CODE: (PC-7209)

E-MAIL Address: pcumin@stblaw.com

I consent to the use of electronic filing procedures adopted by the Court in Administrative Order No. 97-12, "In re Electronic Filing Procedures(EFP)", and consent to the electronic service of all papers.

Signature: _____